UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRACY FORWARD
FOUNDATION,

    *Plaintiff*,

    v.

UNITED STATES
DEPARTMENT OF COMMERCE,

    *Defendant.*

No. 18-cv-0246 (DLF)

## MEMORANDUM OPINION

Before the Court are the Department of Commerce's (Commerce) Motion for Summary Judgment, Dkt. 23, and Democracy Forward's Cross-Motion for Summary Judgment, Dkt. 24. For the reasons that follow, the Court will grant Democracy Forward's motion and deny Commerce's motion.

**I.   BACKGROUND**

On May 19, 2017, Democracy Forward submitted a request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to Commerce. Def.'s Statement of Facts ¶ 1, Dkt. 23-2. It sought "communications made or received in connection with the transaction of government business using any nongovernmental email account . . . established, controlled, or used by Secretary Ross" from January 20, 2017 to the date the search was conducted. *See* Cannon Decl. Ex. 1 (FOIA Request), Dkt. 23-3. In response to the request, Commerce identified four nongovernmental email addresses of the Secretary. Def.'s Statement of Facts ¶ 4; Second Bogomolny Decl. ¶ 4, Dkt. 33-1. The first two accounts were personal accounts that belong to

the Secretary, and the second two were mail "aliases."  First Bogomolny Decl. ¶ 15, Dkt. 27-2; Second Bogomolny Decl. ¶ 9.

Initially, Commerce searched the Secretary's official Commerce email account using these four email addresses as search terms for the period of January 20, 2017 to June 9, 2017, the date on which the FOIA request was perfected.  Def.'s Statement of Facts ¶¶ 2, 6–7.  This initial search produced 56 pages of responsive documents, none of which contained the alias email accounts.  Def.'s Statement of Facts ¶ 8.

Because the initial production revealed that the Secretary had sent emails from one of his personal accounts to Commerce accounts other than his own, Democracy Forward requested on August 14, 2018 that Commerce search other employees' official accounts using the Secretary's four nongovernmental email addresses.  *Id*. ¶ 9.  Commerce agreed, and on September 4, 2018, it searched the official email accounts of 50 Commerce employees, including the Secretary's advisers (the Chief of Staff, the Director of the Office of Policy and Strategic Planning, the General Counsel, and the Director of the Office of Public Affairs) and administrative support professionals with whom the Secretary regularly communicated.  *Id*. ¶¶ 11–12.  Commerce also extended the time frame of the search to cover the period from June 10, 2017 to May 12, 2018.  *Id*. ¶ 10.

This second search produced 280 email chains, *id*. ¶ 19, comprising over 600 pages of responsive documents, *id*. ¶ 13.  The vast majority of these email chains (235) originated with emails sent by a third party to one of the Secretary's two primary personal email addresses.  *Id*. ¶ 20.  On 209 of these email chains, a third-party sender copied an official Commerce account on the original email, *id*. ¶ 23, and on the other 26 email chains, either the Secretary or the third-party sender forwarded or copied the email to an official Commerce account, *id*. ¶¶ 24–26.

Twenty-five of the 280 email chains originated with an email from an official Commerce account. *Id.* ¶ 28. The remaining 20 email chains originated with an email from one of the Secretary's personal email accounts. *Id.*

Overall, the Secretary received a total of 213 unique emails in his two primary personal email accounts. Second Bogomolny Decl. ¶ 4. He sent 40 unique emails from his first personal email account. *Id.* Two of these were sent to a third party, and in both instances, the Secretary copied another Commerce email account, but not his own. Def.'s Statement of Facts ¶¶ 30–31.

The Secretary sent no emails from his second personal email account, and Commerce represents that the Secretary has not accessed this account since before February 28, 2017, the date he was sworn in as Secretary. Second Bogomolny Decl. ¶ 16. The Secretary also did not receive or send any emails through either of his "alias" email accounts. *Id.* ¶ 4.

Democracy Forward highlights 24 email chains as exhibits to their motion. *See* Dubner Decl. Ex. A–X, Dkt. 24-5–24-28. It identifies 18 unique emails that the Secretary sent from his personal email account that he did not copy or forward to his official account. Pl.'s Statement of Facts ¶ 18, Dkt. 24-3. Democracy Forward also points out that on at least 25 occasions, government employees sent emails to the Secretary's personal accounts without emailing his official government account. *Id.* ¶ 21. And on at least 22 occasions, third parties sent emails to one of the Secretary's personal accounts. *Id.* ¶ 22. On "multiple occasions," the Secretary responded to a third party, without copying his or any another Commerce official's account. *Id.* ¶ 24.

Both parties have now moved for summary judgment. Democracy Forward challenges only the adequacy of Commerce's search, arguing that Commerce must search the Secretary's personal email account because the records Commerce produced show that a significant number

3

of emails were sent to and from his personal accounts and not found in his official account. *See* Pl.'s Cross-Mot. At this time, Democracy Forward requests that Commerce search the Secretary's first email account only, but it notes that the results of this search may indicate that a search of his second personal email account is also warranted. *See* Hr'g Tr. at 22:14–23:5, Dkt. 34. Commerce refuses to search any of the Secretary's personal email accounts because it claims its previous searches were "reasonably expected to locate all responsive information." *See* Def.'s Mot at 3.

## II.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Materiality is, of course, a function of the applicable legal standard, which in this case is that an agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996) (internal quotation marks omitted). All facts and inferences must be viewed in the light most favorable to the requester and the agency bears the burden of showing that it complied with FOIA. *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To meet this standard, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements." *Nat'l Cable Television Ass'n, Inc. v. Fed. Commc'ns Comm'n*, 479 F.2d 183, 186 (D.C. Cir. 1973). "The system of disclosure established by the FOIA is simple in theory. A federal agency must disclose agency records unless they may be

4

withheld pursuant to one of the nine enumerated exemptions listed in [5 U.S.C.] § 552(b)." *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988).

"[F]ederal courts . . . rely on government affidavits to determine whether the statutory obligations of the FOIA have been met." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam). The agency's affidavit is accorded a presumption of good faith, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted), and "[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith," *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotation marks omitted).

If, on the other hand, "material facts are genuinely in issue or, though undisputed, are susceptible to divergent inferences bearing upon an issue critical to disposition of the case, summary judgment is not available" to the agency. *Alyeska Pipeline Serv. Co. v. Envtl. Prot. Agency*, 856 F.2d 309, 314 (D.C. Cir. 1988). That said, courts in this jurisdiction recognize that "the vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

### III.   ANALYSIS

The parties dispute whether Commerce conducted an adequate search when it declined to search the Secretary's primary personal email account for "communications made or received in connection with the transaction of government business using any nongovernmental email account [of the Secretary]." *See* Def.'s Statement of Facts ¶ 1.

The adequacy of a search "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). To survive a motion for summary judgment, an agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg*, 745 F.2d at 1485 (emphasis in original); *see also SafeCard*, 926 F.2d at 1201. "'The agency has the initial burden to demonstrate the adequacy of its search, which it may meet by providing declarations or affidavits that are 'relatively detailed[,] . . . nonconclusory and submitted in good faith.'" *Landmark Legal Foundation v. Envtl. Prot. Agency*, 959 F. Supp. 2d 175, 181 (D.D.C. 2013) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). "Once the agency has provided a reasonably detailed affidavit describing its search, the burden shifts to the FOIA requester to produce 'countervailing evidence' suggesting that a genuine dispute of material fact exists as to the adequacy of the search." *Hunton & Williams LLP v. U.S. Envtl. Prot. Agency,* 248 F. Supp. 3d 220, 236 (D.D.C. 2017) (citing *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007)).

This Circuit has made clear that "agency records"—even those stored on a personal email account—are subject to FOIA. *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149 (D.C. Cir. 2016). As the Circuit explained, "an agency always acts through its employees and officials. If one of them possesses what would otherwise be agency records, the

records do not lose their agency character just because the official who possesses them takes them out the door or because he is the head of the agency." *Id.*

Federal law prohibits federal officials from "creat[ing] or send[ing] a record using a non-official electronic messaging account" unless they "cop[y] an official electronic messaging account of the officer or employee in the original creation or transmission of the record" or "forward[] a complete copy of the record to an official electronic messaging account of the officer or employee not later than 20 days after the original creation or transmission of the record." 44 U.S.C. § 2911(a). Government officials are "presumed to have properly discharged the duty to forward official business communications from a personal email account to an official email account." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 319 F. Supp. 3d 431, 437–38 (D.D.C. 2018) (citing cases). But a plaintiff can overcome this presumption with evidence that "rebut[s] agency affidavits with something more than pure speculation." *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 241 F. Supp. 3d 14, 22 (D.D.C. 2017) (internal quotation marks omitted).

Commerce acknowledges that the Secretary did not comply with 44 U.S.C. § 2911(a), the federal recordkeeping law, but the parties dispute how often this occurred: Commerce asserts that the Secretary failed to follow federal law on at least four occasions,[1] *see* July 14, 2020 Hr'g Tr. at 24:17–:20, while Democracy Forward contends that the Secretary failed to do so on 18 occasions, *see* Pl.'s Statement of Facts ¶¶ 18–20. Both parties agree that the presumption of compliance does not apply, *see* Def.'s Reply at 6 n.2, Dkt. 28; Hr'g Tr. at 10:18–:19, because

---

[1] Commerce suggests that some of the emails in Democracy Forward's exhibits, *see* Pl.'s Reply Ex. A-1–A-18, Dkt. 31-2, may not qualify as agency records, but it concedes that at least four do. *See* Hr'g Tr. at 9:9–10:14; 24:17–:20. For purposes of these motions, the Court will assume, without deciding, that the Secretary's primary personal account contains "agency records" within the meaning of FOIA, 5 U.S.C. § 552(a)(4)(B).

even evidence of a single agency record "on a personal account is sufficient to raise a question of compliance with recordkeeping obligations, rendering the presumption of compliance inapplicable," *Brennan Ctr. for Justice at New York Univ. Sch. of Law v. U.S. Dep't of Justice*, 377 F. Supp. 3d 428, 435 (S.D.N.Y. 2019).

Even so, Commerce argues that it need not search the Secretary's personal email accounts because any such search would yield duplicative records. In support, Commerce relies principally on the declarations of Michael Cannon, the Chief of the General Litigation Division of the General Counsel's Office, and Michael Bogomolny, the Senior Counsel for Privacy and Information within the Litigation Division of the General Counsel's Office. *See* Cannon Decl., Dkt. 23-3; First Bogomolny Decl.; Second Bogomolny Decl. But both declarants' descriptions of the Secretary's personal email practices are based solely on the content of those emails Commerce produced as a result of its searches of *official* email accounts. *See, e.g.,* First Bogomolny Decl. ¶ 24 (stating that "the production showed that when Secretary Ross initiated an email from a non-governmental address, he either copied his governmental account or, in a few instances, they were draft emails created on his iPad that he then sent to other Department employees."); *see also* Def.'s Opp'n at 2, Dkt. 27 ("Commerce is able to describe the Secretary's email practices in detail based on a first-hand review of all of the emails containing any of his personal email addresses located in [the official government accounts searched].").

And when describing the Secretary's email practices, the declarants focus almost exclusively on those emails the Secretary *sent*. *See, e.g.,* Cannon Decl. ¶ 19.b.1 ("For those emails that originated from the Secretary, all of them included an official [Commerce] account, and thus also involved [Commerce]'s email servers in their genesis."). Missing from these declarations is any representation that the Secretary *routinely* copied or forwarded *all*

Commerce-related emails that he sent or received through his personal email accounts, such that a search of his personal email account would be duplicative of the official email searches Commerce previously conducted.

And indeed, the record suggests otherwise. The Secretary received 190 unique emails and sent 40 unique emails from his first personal email account. Second Bogomolny Decl. ¶ 4. While the parties have not provided the Court with all of the emails produced, it appears that many, if not all, of the emails in the exhibits attached to Democracy Forward's reply brief relate to official Commerce business.[2] *See* Dkt. 31-2. Commerce discounts a number of these emails as press inquiries and social invitations.[3] *See, e.g.,* Def's Opp'n at 6–8. But Commerce provides no authority for treating these types of documents differently under FOIA when they relate to the Secretary's official business. Commerce also acknowledges that the Secretary did not copy his official account when he sent four emails from his personal email account. *See* Hr'g Tr. at 9:15–:25; 24:17–:20 (referencing Exhibits A-2, A-7, A-11 and A-12, Dkt. 31-2); *see also* Def.'s Reply at 8 (conceding that at least one email is an agency record but noting that the Secretary promptly forwarded that email to his official account). With respect to these four emails (as well as the others highlighted by Democracy Forward), Commerce notes that, eventually, either the Secretary or another individual on the email chain sent or copied the emails to other Commerce

---

[2] *See, e.g.,* Pl.'s Reply Ex. A-4 (email from the Secretary suggesting "we" should invite top space analyst to "our" investment summit); *id.* Ex. A-6 (email from Secretary to schedule a meeting with a third party to discuss national security and economic competitiveness concerns of a technology company); *id.* Ex. A-10 (email from Secretary to schedule a meeting with a business school dean); *id.* Ex. A-13 (email to Secretary to schedule a meeting with a multinational gaming company at the G-20 meeting); *id.* Ex. A-15 (email from Secretary about security transaction reports).

[3] Commerce also discounts official travel-related emails because it contends that the Secretary pays for his business-related travel without seeking reimbursement from the government. *Id.*; *see also* Second Bogomolny Decl.¶ 25.

9

employees' official email addresses. *See, e.g.*, Def.'s Mot. at 7–8; Def.'s Reply at 3. But this does not prove that they did so in all cases.

Where, as here, a government official has used a personal email account for official business, and has not proven—either through a sworn declaration or other evidence—that the official timely and consistently copied or forwarded those emails to the official's government email account, courts have found it reasonable to probe whether the personal email account contains agency records responsive to a FOIA request. *See, e.g., Brennan Ctr. for Justice*, 377 F. Supp. 3d at 435 (search of employees' personal email accounts was reasonable where record showed official business emails on employees' personal accounts and at least one employee had failed to timely forward emails to his official account); *see also Landmark*, 959 F. Supp. 2d at 182 (discovery of personal email practices ordered where record showed "one concrete example of a personal email being used for official purposes" and similar allegations had been raised in media and by Congress); *compare Competitive Enter. Inst.*, 241 F. Supp. 3d at 21–22 (search of personal email account not reasonable where agency official submitted a declaration "attesting to his compliance with [agency] policy" and record showed that the official had "complied with the policy on approximately 4,500 occasions"). Similarly, agencies themselves have requested agency officials to search their personal email accounts where there has been evidence that they used their personal accounts for official business and did not comply with federal recordkeeping requirements. *See, e.g., Judicial Watch, Inc.*, 319 F. Supp. at 438. It would have been reasonable for Commerce to have done so here.

Commerce acknowledges that the Secretary used his primary personal email account for official business without complying with federal recordkeeping requirements. Yet it limited its search only to official email accounts of the Secretary and other Commerce employees.

Commerce's search was not "reasonably calculated" to uncover all relevant documents. *See Morley*, 508 F.3d at 1114.

## CONCLUSION

For the foregoing reasons, Democracy Forward's motion for summary judgment is granted and Commerce's motion for summary judgment is denied.

                                                                                                                              /s/ Dabney L. Friedrich
                                                                                                                            DABNEY L. FRIEDRICH
                                                                                                                            United States District Judge

July 22, 2020